MEEHAN, ADMINISTRATRIX, APPELLANT, *v.* GREAT NORTHERN RAILWAY CO., RESPONDENT.

(No. 2,935.)

(Submitted March 8, 1911. Decided March 22, 1911.)

[114 Pac. 781.]

*Personal Injuries—Railroad Crossings—Contributory Negligence—Burden of Proof—Judicial Notice.*

Personal Injuries—Contributory Negligence—Pleading.
    1.  In an action for personal injuries, contributory negligence is a matter of defense, and its absence need not be pleaded by plaintiff.
Same—Burden of Proof.
    2.  Though under Revised Codes, section 7962, paragraph 4, the law presumes that a person exercises ordinary care for his own safety, yet where plaintiff's own case presents evidence which, if unexplained, establishes *prima facie* contributory negligence, there must be evidence exculpating him, or he cannot recover.

Same—Railroad Crossings—Care Required of Travelers.
   3.   A pedestrian before crossing a railroad track, which is in itself a warning of danger, must look and listen, and, if necessary, stop to learn if there is danger.

Same—Injuries to Pedestrian on Track—Contributory Negligence.
   4.   In an action for the death of a pedestrian struck by a train, evidence *held* to show contributory negligence by decedent, precluding recovery.

Same—Evidence—Judicial Notice.
   5.   The court will take judicial notice of the fact that a city arc-light will cast its rays further than 300 feet.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

Action by Katherine Meehan, as administratrix of the estate of John Meehan, deceased, against the Great Northern Railway Company.   From a judgment for defendant, plaintiff appeals. Affirmed.

*Messrs. Breen & Hogevoll,* for Appellant, submitted a brief. *Mr. H. K. Jones* argued the cause orally.

Contributory negligence cannot be imputed to the deceased. It is a matter requiring affirmative showing, and the affirmative showing must come from the defendant. (*Sprague* v. *Northern Pac. Ry. Co.,* 40 Mont. 487, 107 Pac. 412; *C. & O. Ry.* v. *Steele,* 84 Fed. 93, 29 C. C. A. 81; *C. R. I. & P. Ry.* v. *Hinds,* 56 Kan. 758, 44 Pac. 993; *Washington etc. Ry.* v. *Gladmon,* 15 Wall. 401, 21 L. Ed. 115.)   Therefore, as there is no showing in the agreed statement that Meehan was guilty of contributory negligence, and as there were no eye-witnesses to the accident, it will be presumed that the deceased acted with due care, *i. e.,* that he stopped, looked and listened before attempting to cross the highway over the track of this respondent railway.   (*Chesapeake Ry. Co.* v. *Steele,* 94 Fed. 93, 29 C. C. A. 81; *C. R. I. & P. Ry.* v. *Hinds,* 56 Kan. 758, 44 Pac. 993; *Dalton* v. *C. R. I. & P. Ry.,* 104 Iowa, 26, 73 N. W. 349; *Atchison etc. Ry. Co.* v. *Hill,* 57 Kan. 139, 45 Pac. 581; *Kimball* v. *Friend's Admx.,* 95 Va. 125, 27 S. E. 901; *Washington etc. R.* v. *Gladmon,* 15 Wall. 401, 21 L. Ed. 114; *Southern Ry.* v. *Bryant's Admrs.,* 95 Va. 212, 28 S. E. 183; *Huntress* v. *B. & M. R. Co.,*

66 N. H. 185, 49 Am. St. Rep. 600, 34 Atl. 154; *Cameron* v. *G. N. Ry.*, 8 N. D. 124, 77 N. W. 1016; *Cunningham* v. *Pennsylvania Ry. Co.*, 217 Pa. 97, 66 Atl. 236; *B. & P. R. Co.* v. *Landrigan*, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; *McBride* v. *N. P. Ry. Co.*, 19 Or. 64, 23 Pac. 814; *Texas etc. R. Co.* v. *Gentry*, 163 U. S. 352, 16 Sup. Ct. 1104, 41 L. Ed. 186; *Petty* v. *Hannibal Ry.*, 88 Mo. 306; *Schum* v. *Pennsylvania R. Co.*, 107 Pa. 8, 52 Am. Rep. 468; *Weiss* v. *Pennsylvania R. Co.*, 79 Pa. 387.)

Because of the foregoing, taken in connection with all of the circumstances of this case, *i. e.*, the various negligent acts of the railway company, but one conclusion can be drawn, *viz.*, that if the railway had had its tracks lighted, or had a light on the rear of the train, or had a lookout thereon equipped with the proper appliances to give signals to the engineer, or had rung the bell of the engine and caused the whistle to be blown before reaching this highway where deceased was killed, this deceased would have been warned of the approach of the train, or could have seen it approaching, as under the circumstances of the case it must be presumed that he did not see or hear it because the presumption is that he exercised due care before crossing: that he stopped, looked and listened. The agreed statement shows a *prima facie* right to recover, and as the court is substituted for the jury in passing upon the facts, it seems that the conclusion above indicated should be drawn from the facts, *i. e.*, that the negligent acts of the respondent proximately resulted in the death of Meehan, as this conclusion is the only one drawn by juries under cases involving similar facts.

For respondent, there was a brief by *Messrs. Veazey & Veazey*, and oral argument by *Mr. I. P. Veazey, Jr.*

Under the law, the duty of one about to cross a railroad track to look and listen is not satisfied by looking and listening before the act of crossing is commenced, but is a continuing duty. It is his duty not only to look and listen before stepping upon the tracks, but to continue to do so throughout the act of crossing, until the act of crossing is complete and the traveler

has placed himself outside of the zone of danger and is once more in a place of safety. (*Cranbuck* v. *D. L. & W. Ry. Co.,* 74 N. J. L. 473, 65 Atl. 1031; *Rogstad* v. *St. Paul M. & M. Ry. Co.,* 31 Minn. 208, 17 N. W. 287; *Kansas City etc. R. Co.* v. *Cook,* 66 Fed. 115, 13 C. C. A. 364, 28 L. R. A. 181; *Southern Ry. Co.* v. *Jones,* 106 Va. 412, 56 S. E. 155.) In cases similar to the one at bar it is a well-settled principle, controlling here, that where the physical facts show that, had deceased looked or listened, he could have seen or heard, then the presumption of due care is overthrown, and the presumption arises, within the corollary already referred to, that either he did not look or listen, or that, looking and listening, he did not heed what he saw or heard. (33 Cyc. 1073.) "If the traveler could have seen the train by looking, the presumption is that he did not look, or if he did look, he did not heed what he saw." (3 Elliott on Railroads, sec. 1165; see, also, *Myers* v. *B. & O. Ry. Co.* 150 Pa. 386, 24 Atl. 747; *Payne* v. *Chicago & A. Ry. Co.,* 136 Mo. 562, 38 S. W. 308; *Rollins* v. *C. M. & St. P. Ry. Co.,* 139 Fed. 639, 71 C. C. A. 615; *Pennsylvania Ry. Co.* v. *Mooney,* 126 Pa. 244, 17 Atl. 590; *Pennsylvania Ry. Co.* v. *Pfuelb,* 60 N. J. L. 278, 37 Atl. 1100; *Hauser* v. *Central Ry. of New Jersey,* 147 Pa. 440, 23 Atl. 766; *Central of Ga. Ry.* v. *Foshee,* 125 Ala. 199, 27 South. 1006; *Haetsch* v. *C. & N. W. R. Co.,* 87 Wis. 304, 58 N. W. 392; *Conkling* v. *Erie R. R. Co.* (N. J.), 43 Atl. 666; *Baker* v. *Pennsylvania R. R. Co.,* 182 Pa. 336, 37 Atl. 933; *Smith* v. *Detroit R. R. Co.,* 136 Mich. 282, 99 N. W. 15; *Braudy* v. *Detroit R. R. Co.,* 107 Mich. 100, 64 N. W. 1056; *Kallmerten* v. *Cowen,* 111 Fed. 297, 49 C. C. A. 346; *Southern Ry. Co.* v. *Davis,* 34 Ind. App. 377, 72 N. E. 1053; *L. & N. Ry. Co.* v. *Stephens,* 13 Ind. App. 145, 40 N. E. 148; *Cleveland etc. Ry. Co.* v. *Miller,* 149 Ind. 490, 49 N. E. 445; *Smith* v. *Wabash R. C.,* 141 Ind. 92, 40 N. E. 270; *Chicago etc. R.* v. *Donaldson,* 157 Fed. 821, 85 C. C. A. 185.) As further bearing on the presumption that if deceased could have seen, he either did not look or, looking, failed to heed what he saw, we also refer the court to the following cases: *Schmidt* v. *Railway Co.,* 191 Mo. 215, 90 S. W. 139, 3

L. R. A., n. s., 196; *Shum's Admr.* v. *Railway Co.*, 81 Vt. 186, 19 L. R. A., n. s., 973, 69 Atl. 946; *Schlimgen* v. *Railway Co.*, 90 Wis. 186, 62 N. W. 1045; *Bressler* v. *Railway Co.*, 74 Kan. 256, 86 Pac. 472; *Teel* v. *Railway Co.*, 49 W. Va. 85, 38 S. E. 518; *Sullivan* v. *Railway Co.*, 175 Pa. 361, 34 Atl. 798; *Caldwell* v. *Railway Co.* (Tex. Civ.), 117 S. W. 488; *Smith* v. *Railway Co.*, 34 Tex. Civ. 209, 78 S. W. 556. The following cases may also be cited in connection with presumptions arising in this case: *Gulf etc. Ry. Co.* v. *Mathews*, 32 Tex. Civ. 137, 73 S. W. 413, 74 S. W. 803; *Upton* v. *Railway Co.*, 128 N. C. 173, 38 S. E. 736; *Clegg* v. *Railway Co.*, 133 N. C. 303, 45 S. E. 657; *Stewart* v. *Railway Co.*, 136 N. C. 385, 48 S. E. 794; *Parish* v. *Railway Co.*, 102 Ga. 285, 29 S. E. 715, 40 L. R. A. 364.

MR. JUSTICE SMITH delivered the opinion of the court.

This cause was submitted to the district court of Silver Bow county, sitting without a jury, upon an agreed statement of facts. The court found in favor of the defendant Great Northern Railway Company (the other defendants having been dismissed from the action), and judgment was entered accordingly. From that judgment, an appeal has been taken.

From the statement it appears that two tracks of the defendant company, known as the "Stockyards" and "Y" tracks, extend through the city of Butte; that Warren avenue, so-called, extends from a northerly direction up to the right of way of the railway company in the vicinity of these tracks; that there is another street called Warren avenue, extending up to the right of way of the defendant company on the opposite side of the tracks, but which, if extended, would not connect with the first-named Warren avenue; that neither of said streets has been extended as a public highway across the tracks of the defendant, and the intervening space has never been dedicated to public use as a highway. It appears, however, that "for a period of at least fifteen years that portion of said ground over which said 'Stockyards' track and 'Y' track are constructed,

which lies between the lower 'Y' switch and the 'Stockyard' switch in said track have been continually used, without any invitation from, but with the knowledge of, said railway company and, its officials, by the people of that vicinity as pedestrians, for the purpose of crossing on foot from that portion of said city lying easterly and northeasterly from said tracks, to that portion lying on the southerly and southwesterly side thereof, and especially by large numbers of miners in going to and from their homes and to and from the mines northeasterly thereof, and to and from the Western Iron Works and other industries in which they are engaged; that while said crossings have been made by such persons indiscriminately at various points between said switches, the great number of said crossings has been made along a beaten footpath, and over a strip of ground which would have been within the limits of Warren avenue if it had been extended southerly or southwesterly; that said tracks during all the times herein mentioned were, and still now are, built upon a railway grade or roadbed, the slope of which toward said Western Iron Works was and is about two feet vertically at the place where the deceased was killed, and varies in other places from two to four feet as regards that portion thereof facing the Western Iron Works, and the length of said slope is about five feet from the ties to the level of the surrounding country, and the slope of the roadbed facing away from the Western Iron Works is about four feet deep vertically, with a length of slope of about ten feet; that John Meehan, deceased, left the saloon of John Skubitz at some time after midnight of October 6, 1908, intending to go to his cabin, which was then located in the vicinity of the buildings of the Largey Lumber Company (on the opposite side of all the Great Northern Railway tracks), and upon leaving said saloon stated to Skubitz: 'I am going up Warren avenue where I will only have two tracks to cross, and will avoid the rough travel and the danger of all the switching while crossing the yards'; that no one saw the deceased after he left the saloon, until about 3 o'clock on the following morning, when he was found lying across the 'Y' track aforesaid, with one leg across said track;

the leg had been run over and cut off, and the other leg broken by some car or cars of the Great Northern Railway Company, in consequence of which he was then in a dying condition, and subsequently died within a few hours; that the train of cars mentioned constituted the only cars or car or engine, or other vehicle, owned or operated by the Great Northern Railway Company or its employees, that was on any part of said 'Y' track on the night of October 6 or the morning of October 7; that a passenger train of the defendant company backed over the 'Y' switch on the night in question until the rear car thereof had reached a point beyond the point where the deceased was found; that neither on the night of October 6 nor the morning of October 7 was any portion of said 'Stockyards' or 'Y' track lighted by any means of illumination furnished by the railway company, but that during the whole of said night an arc-light of the same size and capacity as is used elsewhere in the city of Butte for street lighting purposes was located at a point about 300 feet distant from the place where the deceased was found; and said light was actually burning and giving the amount of light given by ordinary street electric arc-lamps; that in backing said train the trainmen did not blow the whistle at all, nor ring the bell at all; that there was an acetylene gas-light on the outside of and in the cupola of the rear platform of the rear car of the train, which was an observation car, said light being intended to light the rear platform thereof and being equal to about a thirty-two candle-power electric-light, and the entire rear portion of said rear car consisted mainly of large windows and a door with full glass panels, but that no other lamps were on the outside of the rear end of said car as it backed down, nor was any brakeman or other employee of the defendant company stationed upon said rear car; that neither the railway company nor any of its employees discovered the presence of deceased on the track or learned of his death until four hours after he was found; that at the time the rear car of the train was going over the lower 'Y' switch, backing as aforesaid, it was running at a rate of four miles an hour, and thereafter the speed of said train was proportionately reduced from four miles an hour to

a dead stop; that no obstructions of any kind existed at the time aforesaid within a circle with a radius of 200 feet, with a center at the point where said deceased was found, and no obstructions and no buildings or other structures of any kind existed on the ground lying between the track extending from said lower 'Y' switch to the 'Stockyards' switch, in a southerly direction to the south line of Second street, except as indicated; that at the time in question the Great Northern Railway Company had in force the two following rules: ' (1) The engine bell must be rung when an engine is about to move, also when running through tunnels and the streets of towns or cities, and for a quarter of a mile before reaching every public road crossing at a grade and until it is passed; (2) When a train is being pushed by an engine, except when shifting and making up trains in yards, a trainman must be stationed in a conspicuous position on the front of the leading car with the proper signals, so as to perceive the first sign of danger, and immediately signal the engineman'; that the night of October 6 and the early morning of October 7 were clear and windy, and the weather was fair; there was no precipitation; that persons who were in the vicinity of the place where Meehan was killed, differ as to whether it was cloudy and dark, or clear and bright.'' It was further agreed that the judge of the district court might inspect the premises where Meehan was killed, and the observation car which ran over him. We presume the learned judge made the inspection.

It is contended on the part of the appellant (1) that the place in question was a ''prescriptive highway''; (2) that, if not a prescriptive highway, the evidence shows a highway by common-law dedication; (3) that, if it was not a highway, the railway company owed to the deceased the same duty of exercising ordinary care for his safety as would have been the case had it been a highway, on account of the fact that he was a licensee upon its tracks. We do not, however, find it necessary to decide the questions involved in these contentions, because we are of opinion that, assuming that the defendant was guilty of a want

of ordinary care, the district court was justified in concluding that the plaintiff had failed to overcome the *prima facie* showing of contributory negligence on the part of deceased disclosed by the facts and circumstances embodied in the agreed statement.

In actions for personal injuries the absence of contributory negligence is not required to be pleaded or proved by the [1] plaintiff, but its presence is a matter of defense. (*Higley* v. *Gilmer*, 3 Mont. 90, 35 Am. Rep. 450; *Nelson* v. *City of Helena*, 16 Mont. 21, 39 Pac. 905; *Mulville* v. *The Pacific Mut. Life Ins. Co.*, 19 Mont. 95, 47 Pac. 650; *Hunter* v. *Montana Central Ry. Co.*, 22 Mont. 525, 57 Pac. 140; *Snook* v. *City of Anaconda*, 26 Mont. 128, 66 Pac. 756; *Ball* v. *Gussenhoven*, 29 Mont. 321, 74 Pac. 871; *Nelson* v. *Boston & Mont. C. C. & S. Min. Co.*, 35 Mont. 223, 88 Pac. 785; *Birsch* v. *Citizens' El. Co.*, 36 Mont. 574, [2]   93 Pac. 940.)   The law presumes that a person exercises ordinary care for his own safety. (Rev. Codes, sec. 7962, par. 4; *Monson* v. *La France Copper Co.*, 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243.)   However, as was said by this court in *Harrington* v. *Butte etc. Ry. Co.*, 37 Mont. 169, 95 Pac. 8, 16 L. R. A., n. s., 395: "When the plaintiff's own case presents evidence which, if unexplained, would make out *prima facie* contributory negligence on his part, there must be further evidence exculpating him, or he cannot recover."

Whether we regard the agreed statement of facts as constituting the plaintiff's case alone, or that of both parties, which is perhaps more nearly the fact, the result is the same. On its face it discloses a case of unexplained contributory negligence on the part of the deceased. Let us remember that the railroad tracks were in themselves a warning of danger. Meehan was on foot, and there was nothing to divert his attention. Not only that, but he had in mind the necessity of crossing the tracks when he left the saloon, and in order to get upon them he was obliged to climb an embankment of some height. Even though [3]   it be conceded that the defendant company negligently omitted to light its tracks, and that its employees neglected to give the required signals, it was nevertheless the duty of Meehan

to make a vigilant use of his senses; to look or listen, and to stop for that purpose, if necessary, to learn if there was danger. (*Hunter* v. *Montana Central Ry. Co., supra.*)   He was bound [4] to look and listen before attempting to cross the tracks, and not to walk carelessly into a place of danger.   What situation do the surrounding facts and circumstances disclose?   The train was backed down to the place of the accident at a very slow rate of speed, so slow, indeed, that a man might easily walk ahead of it in safety; there was a city arc-light at a point not to exceed 300 feet away, and we take notice that such a light [5] will cast its rays much farther than 300 feet; the train consisted of several cars, besides the locomotive, and must have made some noise, even at the slow rate of speed at which it was proceeding; railroad cars are large objects, easily discernible by electric-light; added to this there was an acetylene gas-light in the cupola on the outside of the observation car, which was intended to, and, as we know from every-day experience, does light the rear platform of the car; there were no obstructions of any kind to interfere with the power of observation of the deceased, and no buildings or other structures which would tend to form a dark background to the cars as they approached.   We are impelled to the conclusion that Meehan neither looked, listened, nor took any precautions for his own safety.   Had he used his senses, he could not have failed both to hear and to see the approaching train.   Having omitted to use them, he was guilty of contributory negligence, and the district court properly so held.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.