MOLT, Respondent, *v.* NORTHERN PACIFIC RAILWAY CO., Appellant.

(No. 3,043.)

(Submitted January 16, 1912. Decided January 20, 1912.)

[120 Pac. 809.]

*Personal Injuries—Master and Servant—Assumption of Risk—*
*Evidence—Appeal and Error—Theory of Case—Dismissal.*

Appeal and Error—Order Denying New Trial—Appeal from Judgment.
1.  Under Revised Codes, sections 6794, 7098, 7107, authorizing a new trial on enumerated grounds and appeal from a final judgment or order granting or refusing a new trial, and providing, in case of appeal from a final judgment and order granting or refusing a new trial at the same time, only one undertaking need be given, the trial court, notwithstanding an appeal from a judgment, retains jurisdiction over a motion for new trial, and an appeal may be taken from a denial thereof.

Master and Servant—Injury to Servant—Assumption of Risk.
2.  An experienced machinist in a roundhouse was injured by slipping into a dark pit, containing various appliances for repair work; the roundhouse and pit being of standard construction. A locomotive over the pit was undergoing general repairs, and the employee was directed by a superior to get down into the pit and perform specified work in the line of his duty, and proceeded to do the work without sufficient light. *Held,* that the employee, as a matter of law, appreciated the danger and assumed the risk.

Appeal and Error—Theory of Case—Appeal.·
    3. Where an employer attempted to plead contributory negligence
    and assumption of risk, and the cause was tried on the theory that
    the defenses were pleaded without objection to the insufficiency of
    the pleading, the employee could not urge, on appeal, that the
    employer could not rely on the defenses.

Master and Servant—Injury to Servant—Assumption of Risk—Evidence.
    4. Where the testimony of an employee disclosed that he assumed
    the risk of injury, the employer could take advantage of the· de-
    fense, though not sufficiently pleaded.

Appeal and Error—Disposition of Case on Appeal—Dismissal.
    5. Where plaintiff had a fair opportunity to prove a cause of action
    and failed to do so, the court, on appeal from a judgment in his
    favor, will reverse it and direct a dismissal.

*Appeal from District Court, Missoula County; F. C. Web-
ster, Judge.*

ACTION by C. F. Molt against the Northern Pacific Railway
Company. From a judgment for plaintiff and from an order
denying a new trial, defendant appeals. Reversed and re-
manded, with instructions to dismiss the case.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F.
Gaines,* for Appellant, submitted a brief. *Mr. E. M. Hall*
argued the cause orally.

The allegation of the second count is that defendant was
required, but had negligently failed and neglected, to provide
and furnish sufficient torches and oil, or such other good and
sufficient means for properly lighting said pit, etc. And de-
fendant would have fully met this alleged duty if it had placed
oil, or any other suitable lighting appliance or material in a
conveniently accessible place; or if, as to the oil, it had put its
delivery in charge of a competent servant. "The uncontra-
dicted evidence showed * * * that the defendant kept a
full supply of tools of this kind in a closet and scattered about
the shop; that when a workman was to use a tool, he was to
get it for himself, selecting such as he required." (*Hefferen*
v. *Northern Pac. R. Co.,* 45 Minn. 471, 48 N. W. 1; see, also,
*Harley* v. *Car Co.,* 142 N. Y. 31, 36 N. E. 813; *Webber* v. *Pip-
per,* 109 N. Y. 496, 17 N. E. 216; *Cregan* v. *Marston,* 126 N. Y.
568, 22 Am. St. Rep. 854, 27 N. E. 952; *McKinnon* v. *Norcross,*

**148** Mass. 533, 20 N. E. 183, 3 L. R. A. 320; *Ling* v. *Railway Co.,* 50 Minn. 160, 52 N. W. 378; *Towne* v. *Power Co.,* 146 Cal. 766, 81 Pac. 124, 70 L. R. A. 214, 2 Ann. Cas. 905; *Amburg* v. *Paper Co.,* 97 Me. 327, 54 Atl. 765; *Cleveland etc. Ry. Co.* v. *Brown,* 73 Fed. 970, 20 C. C. A. 147; *Vogel* v. *Bridge Co.,* 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 729.)

The essentials of the doctrine of assumed risk are (1) a knowledge of the conditions making for danger; (2) a knowledge of the danger itself. Did plaintiff know the condition? None knew better than he himself. Otherwise than in his German training, he admits he stood in the shoes of a native trained machinist. And one who hires out as a machinist, or helper, impliedly guarantees thereby that he possesses the knowledge and skill of the average craftsman in that trade. (*Wagner* v. *Chem. Co.,* 147 Pa. 475, 30 Am. St. Rep. 745, 23 Atl. 772; *Washington etc. Ry. Co.* v. *McDade,* 135 U. S. 569, 10 Sup. Ct. 1044, 34 L. Ed. 235; 1 Labatt on Master and Servant, sec. 241, pp. 545, note, and 546.) Did he appreciate the danger? This lay in the hazard of stepping on a greasy binder, on account of inability to determine its location, by reason of insufficient natural light; and also in the hazard of falling, if either his foot should slip on the binder, or if the latter should slip from under his foot. The darkness, then, and the chance of a greasy binder sliding under his foot, or his foot slipping on it, were the risks. As to the hazard of slipping on slippery surfaces, it is held that any ordinarily prudent person, even an untrained man, could sense this. And, therefore, he is charged with a knowledge of this danger as matter of law, and without any regard to what his training may have been. (*McIntire* v. *White,* 171 Mass. 170, 50 N. E. 524; 1 Labatt on Master and Servant, p. 1038, note "Slippery Surfaces," and cases cited; also p. 1045; *Jones* v. *Railway Co.,* 95 Ky. 576, 26 S. W. 590, 36 L. R. A. 582; *Railway Co.* v. *Smith,* 9 Lea, 685; *Shea* v. *Railway Co.,* 76 Mo. App. 29; *Bohn* v. *Railway Co.,* 106 Mo. 429, 17 S. W. 580; *Yazoo Co.* v. *Smith,* 78 Miss. 140, 28 South. 807; *Olson* v. *McMullen,* 34 Minn. 94, 24 N. W. 318; *Romona Stone Co.* v. *Tate,* 12 Ind. App. 57, 37 N. E. 1065, 39 N. E. 529.) As to a dark roundhouse pit,

the rules seem to be equally well settled, and to the same effect. (*McDonnell* v. *Railway Co.,* 105 Iowa, 459, 75 N. W. 336; see, also, *Northern Pac. Ry. Co.* v. *Post,* 170 Fed. 943, 96 C. C. A. 153.)   And the rule, of course, has been declared to be the same as to dark places generally. (*Woelflen* v. *Lewiston-Clarkston Co.,* 49 Wash. 405, 95 Pac. 493; see, also, *McCafferty* v. *Dyeing Co.,* 194 Mass. 412, 120 Am. St. Rep. 562, 80 N. E. 460; *McCann* v. *Atlantic Mill,* 20 R. I. 566, 40 Atl. 500; *McLeod* v. *Railway Co.,* 191 Mass. 389, 114 Am. St. Rep. 628, 77 N. E. 715; *Nealand* v. *Railway Co.,* 173 Mass. 42, 53 N. E. 137; *Overby* v. *Railway Co.,* 37 W. Va. 524, 16 S. E. 813; White on Personal Injuries, sec. 351; *The Saratoga,* 87 Fed. 349; 1 Labatt on Master and Servant, sec. 265.)   It must be borne in mind, too, that this was a repair job.   And therefore those engaged in it took the risk of finding anything in the pit that might be expected to be used in connection with the repairs or replacement. (*Coal Co.* v. *Lamb,* 6 Colo. App. 255, 40 Pac. 251; 1 Labatt on Master and Servant, sec. 268, p. 614, note 1, and 618, note 1, sec. 279, p. 658, note, and 687, note.)   Moreover plaintiff took employment in that roundhouse after it was built, and therefore he took the risks obviously incident to operation growing out of the manner in which it was built.   He could not ask the master to rebuild. (*McCafferty* v. *Dyeing Co., supra; McLeod* v. *Railway Co.,* 191 Mass. 389, 114 Am. St. Rep. 628, 77 N. E. 715.)

*Mr. Thomas N. Marlowe,* and *Messrs. Marshall & Stiff,* for Respondent, submitted a brief; *Messrs. Marlowe* and *Stiff* argued the cause orally.

The facts involved in this case are somewhat similar to those in the case of *Nord* v. *B. & M. C. C. & S. M. Co.,* 30 Mont. 48, 75 Pac. 681, one of the leading cases in the state on the question of contributory negligence, assumption of risk and when the district court should grant a nonsuit.   In that case the defendant company had constructed six ore bins, and lengthwise over these bins two railroad tracks had been constructed and maintained, over which track cars loaded with ore were moved. Two board walks were also constructed parallel to the tracks

for the men to walk on. Some of the ore bins were not covered between the tracks and the nearest light was about 120 feet away. Plaintiff was hired to unload cars and do other work, and was unloading cars when injured about 2 o'clock A. M. He had only worked ten shifts when injured and never before had unloaded cars. In the case at bar, Molt, the plaintiff, had worked three shifts and never before been in the pit wherein he was injured. Nord placed his foot on the rail of the track and reached over to uncouple the car and fell into the bin, breaking his back. Molt, the plaintiff in this case, let himself down into the pit and when he thought he had firm footing raised up to do his work. It turned out, however, that he did not have firm footing and his foot slipped on some of the parts of engines in the bottom of the pit, which, on account of the darkness, he could not see, and he fell, greatly injuring his back, causing partial paralysis to his lower limbs and bowels "There was a little light between the track, but it was very dark between the cars," so says the court in the statement of the Nord case. In this case there was a little light in the roundhouse, but in the pit it was very dark.

In the Nord case, in passing upon the question of whether the trial court properly granted a nonsuit, this court cites with approval the case of *Cain* v. *Gold Mountain Min. Co.,* 27 Mont. 529, 71 Pac. 1004, where it was said: "Upon a motion for a nonsuit everything will be deemed to be proven which the evidence tends to prove." This is now settled law in this state. (*Herbert* v. *King,* 1 Mont. 475; *Gans* v. *Woolfolk,* 2 Mont. 463; *McKay* v. *Montana Union Ry. Co.,* 13 Mont. 15, 31 Pac. 999; *Creek* v. *McManus,* 13 Mont. 152, 32 Pac. 675; *State ex rel. Pigott* v. *Benton,* 13 Mont. 306, 34 Pac. 301; *Mayer* v. *Carothers,* 14 Mont. 274, 36 Pac. 182; *Soyer* v. *Great Falls Water Co.,* 15 Mont. 1, 37 Pac. 838; *Powers* v. *Klenzie,* 15 Mont. 177, 38 Pac. 833; *Jensen* v. *Barbour,* 15 Mont. 582, 39 Pac. 906; *Emerson* v. *Eldorado Ditch Co.,* 18 Mont. 247, 44 Pac. 969; *Holter Lbr. Co.* v. *Fireman's Fund Ins. Co.,* 18 Mont. 282, 45 Pac. 207; *Morse* v. *Granite County Commissioners,* 19 Mont. 450, 48 Pac. 745; *Cameron* v. *Kenyon-Connell Commercial Co.,* 22 Mont. 312, 74

Am. St. Rep. 602, 56 Pac. 358, 44 L. R. A. 508; *Cummings* v. *Helena & Livingston S. & R. Co.,* 26 Mont. 434, 68 Pac. 852; *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871.) We insist that the evidence here not only tended to prove plaintiff's case, but did prove it. The rule is well established in Montana that no cause should ever be withdrawn from the jury unless the conclusions from the facts necessarily follow as a matter of law that no recovery could be had upon any view which could reasonably be drawn from the facts which the evidence tends to establish. (*Great Northern Ry. Co.* v. *McLaughlin,* 70 Fed. 669, 17 C. C. A. 330; *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42; *Ball* v. *Gussenhoven,* 29 Mont. 321, 74 Pac. 871; *Michener* v. *Fransham,* 29 Mont. 240, 74 Pac. 448; *Gardner* v. *Mich. Central Ry. Co.,* 150 U. S. 349, 14 Sup. Ct. 140, 37 L. Ed. 1107; *Patton* v. *Southern Ry. Co.,* 82 Fed. 979, 27 C. C. A. 287.)

*Messrs. Gunn & Rasch, Mr. E. M. Hall,* and *Mr. W. W. Patterson* filed a reply brief in behalf of Appellant, dealing with questions relating to the jurisdiction of the district court to pass upon the motion for a new trial after appeal from the judgment, and the sufficiency of the affirmative allegations in the answer to plead contributory negligence and assumed risk.

MR. JUSTICE SMITH delivered the opinion of the court.

Plaintiff alleges in his complaint that on the 3d day of March, 1906, he was an employee of the defendant company in its roundhouse at Missoula; that he was directed to go into a certain pit under a locomotive engine and clean parts of the engine; that the pit was in a dangerous condition by reason of the negligence of the defendant in failing to properly light the same; that it allowed parts of the engine, tools, blocks, and pieces of iron to accumulate therein; that plaintiff stepped upon said accumulation of engine parts and other materials, without knowing that they were there, was violently thrown down, and thereby injured. A second cause of action is predicated upon

an alleged negligent failure of the defendant to furnish its employees with sufficient torches and oil to light the engine pits, thus breaching its duty to furnish the plaintiff with a reasonably safe place in which to work. Among other defenses, those of contributory negligence and assumption of risk were interposed. Plaintiff had a verdict and judgment in the court below, and defendant appeals from the judgment and from an order denying its motion for a new trial.

1. We shall first dispose of a contention advanced by the respondent. His counsel claim that this court cannot consider [1] the appeal from the order denying appellant's motion for a new trial, for the reason that before the order was entered an appeal from the judgment had been perfected; and therefore the lower court was without jurisdiction to take any further steps in the cause. The situation disclosed by the record well illustrates the infirmities in, and the anomalous situations too often resulting from, our cumbersome, intricate, and most unsatisfactory system of appellate procedure. Appeals from orders denying new trials should be abolished by the legislature at its next session, without delay. This court has repeatedly held that, as a general rule, an appeal, properly perfected, deprives the trial court of further jurisdiction in the cause. (See *Glavin* v. *Lane,* 29 Mont. 228, 74 Pac. 406; *Hynes* v. *Barnes,* 30 Mont. 25, 75 Pac. 523.) But these, and analogous cases, must be read and construed in the light of the fact that the statute (sec. 6794, Rev. Codes) gives the district court power to grant a new trial, and section 7098, Revised Codes, gives the right of appeal from an order granting or refusing a new trial. Furthermore, section 7107, Revised Codes, by implication, recognizes the right to appeal at different times. In case of appeal from a judgment, the lower court loses jurisdiction over the judgment; but it still retains jurisdiction over the motion for a new trial, with power to rule thereon. Proceedings on motion for a new trial are independent of the judgment and, in a sense, collateral thereto. Any other interpretation of the authorities would, in some cases, deprive the losing party of his statutory right of appeal. (See *Naglee* v. *Spencer,* 60 Cal. 10; *Rayner* v.

*Jones,* 90 Cal. 78, 27 Pac. 24; *Knowles* v. *Thompson,* 133 Cal. 245, 65 Pac. 468.)

2. Plaintiff testified: "I was thirty-two years old when this accident happened. I had learned the machinist's trade in Germany, but never worked at it over here, where I had followed stationary engineering. I worked one day getting the pits open, and ran the stationary plant that night. The morning of the third day I went to work as a helper; helped Machinist Everts fitting driving boxes. My torch got dim, and I went to the toolroom to fill it. The can was empty. We worked for a while, and Everts told me to go over again. I found the can still empty; got an order for oil from the foreman, but was told at the storeroom there was no oil there. Everts said, 'We will have to do the best we can without it.' It was then late in the forenoon. We worked till 3 P. M., and finished, and Everts told me to help Memory. We put on a couple of cylinder heads, and then Memory took me to the side of the engine, and said, 'Go down there and clean off these binders.' I went to the pit and sat down to get in, holding with my right hand. I slipped down, and when I thought I had solid footing I let go and turned around, and while I was turning around something slipped and turned over under my foot. I fell over backward, and was knocked senseless. The roundhouse was dark. You could hardly do anything without a light. You could not see in the pit from where I was working, and I never had been in there, and knew nothing about the condition inside. I seen one of the binders standing up alongside of the pit, one of the ends sticking out, and could not see anything; but I did see this one. It was darker in the pit, because the engine was standing over it. I do not know what was in the pit. When I thought I had a solid footing, I let go. This was about 4 or half-past 4 in the afternoon. My apprenticeship as machinist was four years in the old country, and I became a machinist four years before coming to America. Q. As they take off the parts of engines, they lay them down at convenient places, where they can put them on again when they want to put them back? A. It was not customary where I used to work, where I learned my trade.

On the outside platform, beside the engine, that morning, there was one or two driving-wheels; they were in the drop pit. There might have been other parts up on the floor. I noticed the cylinder heads there. The detached driving-wheels and blocks belonged to the engine over the pit into which I fell. I could not have gotten into the pit through the frame as I did, unless the driving-wheels were off. The driving-boxes that Everts and I were fitting were detached and between the two engines, twelve feet from their normal position. They were held fast in proper position on the engine by wedges and binders. The latter was what Memory told me to wipe off, and they and the wedges had to be removed before you could get the driving-boxes off. There are four wedges for each driving-box, and there are three or four driving-boxes on each side and one binder for each driving-box. I had worked an hour with Memory on the cylinders before the accident. I never worked in a machine-shop in this country, and the machine-shops we worked in in the old country did not have any pits, but had elevated tracks, and we could walk right under the engine. The blocks on which the drivers rested when we were fixing them were different sized wooden blocks. They were in the drop pit, where we were working. We used them to get the drivers up high. That engine was in there to be repaired, and I was putting back the parts when Memory told me, 'Go down here and clean off these binders.' We were then standing where the drivers would have been, if in place, right opposite the engine. He pointed to the pit, and the lower end of the binder that I saw leaning against the pit must have been resting slantwise on the floor. Q. Did you see anything of the other binders? A. I don't know. Q. Did you see anything of the wedges? A. No, sir; I did not know what was in the pit, or anything about it.''

Everts testified: ''Molt's work showed ability. The pit was full of parts of the engine, eccentric straps, bolts, binders, binder pulleys, brake shoes, wedges, blocks, bars, chains, ropes, and tools that we were using underneath. Molt had not assisted in putting any of these pieces in the pit. From where Molt and I worked, you could not see the condition of that pit, because it

was too dark.  There were a few electric lights around.  You needed artificial light to see what you were doing in the round-house, especially under the pit.  There was more or less steam there all the time; skylight was always dirty.  It did not let in much light.  The things I saw in the pit were parts of the engine taken down in the course of repairing, or appliances used to take them down; and none of that stuff was up on the floor when we were working there in the morning.  There was not sufficient light to see without artificial light."

Memory testified: "I took Molt to the opening in the engine frame, where the wheels had been dropped, and told him to get down in the pit and wipe off that stuff that was around there, meaning the parts of the engine.  It was usual to drop the parts into the pit until ready to be replaced, if no repairs were to be made on them, and the tools, ropes, and blocks used in the work are always kept right at hand.  He stood right opposite where the drivers had come off at an opening in the frame.  He probably asked me for a light at that time.  I gave him none.  The roundhouse was built like all others, and the pit was the ordinary standard pit.  There was nothing in the pit, except the parts necessarily taken down from the engine to get the driving-wheels off, and such parts as were needed to repair or the appliances to do the work.  I had been working on the particular engine about two weeks, using a torch.  A torch was necessary while doing my work.  I knew Molt did not have a light, and told him to go down there and wipe the parts off, and had expected that he would be able to do it after he stayed there for a while, and got accustomed to the darkness."

Molt, recalled, testified that "in the old country, if an engine came into the house for general repairs, every piece taken off was put on a truck and taken to the wiper's bench, cleaned, and left there until wanted."  He continued: "I did not know what they done with them here, but presumed they handled them the same as in the old country, and that they never remained under the engine, or anywhere around there.  I do not know anything about what the practice was here in this round-house, in regard to the place where they put those parts of the

engines that were removed.  Many pieces have to be taken off that are not wiped or repaired.  They would go to the wiper's bench just the same; that was where all the wiping of parts was done.  I did not see any bench around there.''

At the close of plaintiff's case, defendant's counsel moved for a nonsuit, on the grounds (1) that plaintiff's own testimony disclosed that he was guilty of contributory negligence; and (2) that he assumed the risk arising from the conditions which produced his injury.  This motion was overruled, but it should have [2] been granted.  The plaintiff was a machinist of eight years' experience.  He was capable, and did his work well.  He was thirty-two years of age, and thoroughly conversant with the work which he was employed to do.  Several hours before the accident, he had attempted to get oil for his torch, but had failed, and thereafter managed to do his work without the aid of a torch.  The roundhouse and pit were of standard construction, but were, necessarily, perhaps, quite dark, the pit especially so, all of which he knew and had known from 8 o'clock in the morning until 4 o'clock in the afternoon.  The pit was so dark that a man could not see anything in it until he had remained there for some considerable length of time.  The locomotive engine was undergoing general repairs.  The parts of the machine, together with the appliances, such as blocks, pulleys, and tools used by the workmen, were in the pit, according to the usual custom of the company.  Not any negligence is predicated upon this custom or upon failure to warn.  Neither is it charged that defendant was negligent in allowing materials to accumulate in the pit.  Therefore, the methods adopted by it for carrying forward its work are presumed to have been prudent and reasonable, under the circumstances.  The negligence complained of is failure to sufficiently light the premises, and failure to furnish a light to the plaintiff.  Not any of the minor parts of the locomotive which had been removed were to be observed above the pit, although it must have been apparent to the most casual observer, not to mention a skilled mechanic, that the machine was partly dismantled.  Plaintiff was directed by Memory to get down into the pit and ''wipe off the stuff,''

44 Mont.—31

or "clean off these binders," meaning the parts which had been removed. This was the work he was hired to do. One binder was in sight, projecting out of the pit, or leaning against the side thereof in an inclined position. The learned counsel for the plaintiff appear to have realized that, under these circumstances, he would be held to have known and appreciated the risk of getting down into the pit, darkened as it was, and filled with tools and portions of the engine, unless they could establish by him that he was ignorant of the conditions there existing; so he was recalled for the purpose of testifying that in the old country the removed parts were taken away to a wiper's bench. But this testimony does not assist him. He saw no wiper's bench in this roundhouse, and had no reason, so far as his testimony discloses, for believing that one was in use. On the contrary, he saw one binder in the pit, and was directed by Memory, according to the testimony of the latter, to get down and wipe off the stuff. What stuff? Obviously the stuff—materials, tools, *etc.*—in the pit. How can he be heard to say that he had no knowledge that there was anything in the pit? No reasonable man ought to credit such a statement, in the light of this testimony; and this case must be decided according to the standards of reasonable men. While, under some circumstances, negligence might have been predicated upon the condition of this dark pit, the plaintiff, who knew all about the situation which confronted him, and who must have appreciated the danger of "slipping into" a dark pit filled with tools, blocks, pulleys, and engine parts, cannot be heard to say that he did not assume the risk. (See *Coulter* v. *Union Laundry Co.*, 34 Mont. 590, 87 Pac. 973; *Fotheringill* v. *Washoe C. Co.*, 43 Mont. 485, 117 Pac. 86.) The danger and peril of "slipping" into the pit was patent, and plaintiff must have appreciated it. The only inference to be drawn from the testimony is that the object encountered by him was one which was properly in the pit. Therefore he assumed the risk.

3. We doubt very much, also, whether a skilled workman, thirty-two years of age, could perform the heedless and reckless act of "slipping" down into a dark pit in ignorance of what

was at the bottom thereof, letting himself go when he "thought he had solid footing," without incurring the imputation of contributory negligence as a matter of law.

4. It is claimed by respondent that appellant cannot rely upon the affirmative defenses of contributory negligence and assumption of risk, because they are not properly or sufficiently pleaded. · The cause was tried before this court laid down the rule of pleading found in *Gleason* v. *Missouri River P. Co.,* 42 ·Mont. 238, 112 Pac. 394. Appellant attempted to plead the two affirmative defenses, and in fact did plead the same, in general language, in accordance with the custom theretofore [3] prevailing. The cause was tried on the theory that the defenses were sufficiently pleaded. No objection was made to the answer on that score in the court below. The court charged the jury, in effect, that these defenses were to be considered. In addition to the foregoing, the plaintiff's own testimony [4] discloses the infirmities which we have pointed out; and the defendant could therefore, on motion for nonsuit, take advantage of the same. (*Nelson* v. *City of Helena,* 16 Mont. 21, 39 Pac. 905; *Harrington* v. *Butte etc. Ry. Co.,* 37 Mont. 169, 95 Pac. 8, 16 L. R. A., n. s., 395; *Longpre* v. *Big Blackfoot M. Co.,* 38 Mont. 99, 99 Pac. 131; *Meehan* v. *Great Northern Ry. Co.,* 43 Mont. 72, 114 Pac. 781.)

The judgment and order are reversed, and, as the plaintiff [5] has had one fair opportunity to prove a cause of action, and has failed, the district court is directed to dismiss the case.

*Reversed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.