MOSHER, RESPONDENT, *v.* SUTTON'S NEW THEATER CO., APPELLANT; J. K. HESLET, RESPONDENT.

(No. 3,277.)

(Submitted September 1913.  Decided October 22, 1913.)

· [137 Pac. 534.]

*Master and Servant—Personal Injuries—Safe Place—Defective Appliances—Competent Fellow-servants—Intoxication—Duty of Master — Assumption of Risk — Variance — Instructions — Verdict—When not Against Law—Witnesses—Credibility— Matter for Jury.*

Master and Servant—Personal Injuries—Charges of Negligence—Pleading and Proof.
    1.  Where the particulars in which defendant's negligence is alleged to have resulted in plaintiff's personal injuries are not pleaded as interdependent or concurring causes, plaintiff is not required to establish them all, but proof of negligence in either of the particulars mentioned is sufficient to take the case to the jury.

Same—Safe Place to Work—Burden of Proof.
    2.  Under a charge that plaintiff's injuries were caused by defendant's failure to furnish him with a safe place to work, in that the latter

neglected to provide a certain appliance, it was incumbent upon plaintiff to establish the fact that he was in the employ of the defendant at the time of the accident, that defendant's failure to furnish the appliance was negligence, and that because of such negligence the injuries occurred.

Same—Fellow-servants—Intoxication—Proximate Cause.

3. Evidence *held* to show that the method employed by defendant for the doing of certain work was in itself reasonably safe, and that plaintiff's injuries were primarily due, not to defendant's negligent failure to provide a certain appliance, but to the action of intoxicated fellow-servants.

[As to who is an incompetent fellow-servant, see note in Ann. Cas. 1912C, 96.]

Same—Pleading and Proof—Immaterial Variance.

4. A variance between an allegation charging negligence on the part of defendant because of failure to employ reasonably competent fellow-servants, and proof that defendant kept such servants employed knowing of their unfitness because of intoxication, *held* too unsubstantial to warrant a reversal of the judgment in plaintiff's favor, where appellant did not during trial ask for relief on the ground of surprise, and witnesses in its behalf testified fully denying intoxication.

Same—Competent Fellow-servants—Duty of Master.

5. Defendant master was obliged not only to use ordinary care to employ, but also to keep employed, competent fellow-servants—*i. e.,* to see that they did not become incompetent by reason of intoxication.

Same—Assumption of Risk—Instruction—Proper Refusal.

6. An instruction on the subject of assumption of risk which does not advise the jury that the person to be charged therewith must have appreciated and realized the danger incident to his employment, may properly be refused.

[As to the doctrine of assumption of risk in the law of master and servant, see note in 97 Am. St. Rep. 884.]

Same—Assumption of Risk—Negligence of Fellow-servants—Pleading and Proof.

7. Unless they affirmatively appear from plaintiff's own pleadings or proof, assumption of risk and negligence of fellow-servants, being matters of defense, must be pleaded to be available to defendant.

Same.

8. Where plaintiff's proof showed that, being directed to go to the assistance of a colaborer and becoming aware of the latter's intoxicated condition, he refused to assist him and was injured while making his way out of any possible danger, it may not be said that assumption of risk was made apparent by his own testimony, so as to make the defense available to defendant under the rule declared in paragraph 7, *supra.*

Same—Instructions—"Losses" or "Damages"—Harmless Error.

9. An instruction telling the jury that the employer must indemnify his employee for the "losses" caused by the former's want of ordinary care, *held* not so meaningless as to be confusing, the term "losses" evidently being used in the sense of legal damages.

Same—Verdict—When not Against Law.

10. Where negligence resulting in personal injury was charged in two particulars, only one of which was supported by the evidence, and the court instructed the jury to find for the defendant if negligence in the particular not proven had not been shown, a verdict for plaintiff, general in character, was not open to the charge that it was against law.

Same—Credibility of Witness—Province of Jury.
 11.   The credibility of witnesses in a personal injury action is a matter
 within the exclusive province of the jury; hence the contention of de-
 fendant on appeal from the judgment and order denying a new trial,
 that the jury should have discredited plaintiff and his witnesses and
 believed those of defendant, is of no avail.

Pleading and Proof—Variance—Waiver.
 12.   Where an action was tried in the district court on the theory that
 the pleadings were sufficient to admit certain proof for the purpose for
 which it was offered, the losing party will not be heard to assert on
 appeal for the first time that there was a fatal variance.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

Action by Charles W. Mosher against Sutton's New Theater Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Messrs. George F. Shelton, Fred J. Furman,* and *A. J. Verheyen,* for Appellant, submitted a brief; *Mr. Furman* argued the cause orally.

The master need exercise only ordinary care to provide the servant with a reasonably safe place to work. (*Fearon* v. *Mullins,* 35 Mont. 232, 88 Pac. 794; *Leary* v. *Anaconda Copper Min. Co.,* 36 Mont. 157, 92 Pac. 477; *Longpre* v. *Big Blackfoot Mill. Co.,* 38 Mont. 99, 99 Pac. 131; *Monson* v. *La France Copper Co.,* 39 Mont. 50, 133 Am. St. Rep. 549, 101 Pac. 243; *Forquer* v. *North,* 42 Mont. 272, 112 Pac. 439; *Gregory* v. *Chicago etc. R. Co.,* 42 Mont. 551, 113 Pac. 1123; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673.) Now, what was ordinary care to so provide such reasonably safe place in this instance? The defendant was required to exercise only ordinary care to furnish reasonably safe and suitable appliances in general use in the same kind of business; and the master is not liable because of his failure to use some attachment or special device which might have avoided the injury, if he does use ordinary care to provide the appliances which are in general use in the particular kind of business (*Forquer* v. *Slater Brick Co.,* 37 Mont. 426, 97 Pac. 843); that is to say, this defendant is bound to do only what ordinarily prudent masters do in the same business

under the same circumstances. (*Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904.) The rule we here invoke has been categorically stated by this court: The master is not bound to select the best appliances, nor the safest or best method for their operation. If, at the time of the selection of the particular appliance, it is generally used for the same purpose and operated in the same way, it being at the same time reasonably adapted to the purpose in hand, the master has fully discharged his duty (*Gregory* v. *Chicago etc. R. Co.,* 42 Mont. 551, 113 Pac. 1123); and when that duty is discharged, the master is relieved of liability. (*Masich* v. *American Smelting & R. Co.,* 44 Mont. 36, 118 Pac. 764.)

Even though every item of evidence introduced on behalf of the plaintiff be viewed as uncontradicted, he would nevertheless be precluded from recovery by the doctrine of assumption of risk established by the laws of Montana, and so repeatedly announced and followed by this court. The doctrine is established upon section 5243 of the Revised Codes; and, under this section, the employee is conclusively presumed to assume the ordinary risks of his employment as a part of his contract of service. (*Cummings* v. *Helena etc. R. Co.,* 26 Mont. 434, 68 Pac. 852; *Schroder* v. *Montana Iron Works,* 38 Mont. 474, 100 Pac. 619; *Thurman* v. *Pittsburg etc. Copper Co.,* 41 Mont. 141, 108 Pac. 588.) And the risks contemplated are by no means limited to those ordinarily incident to a servant's work which an ordinarily prudent person of the servant's experience would have discovered, according to the opinion of this court in *Leary* v. *Anaconda Copper Min. Co.,* 36 Mont. 157, 92 Pac. 477. The proposition that a servant, while he may assume that the master has performed his duty fully, still assumes risks that are open and obvious, is established in *Gregory* v. *Chicago, M. & St. P. R. Co., supra.* And it is equally true that a servant assumes every risk connected with a situation the dangerous character of which he understands and appreciates. (*Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86.) Even the extraordinary risks are uniformly held to be assumed when the

servant knows of them at the time of his employment, or when he learns of them after his employment and then continues in the service after the lapse of a reasonable time in which the master may repair and remedy the defect.    (*McCabe* v. *Montana Cent. R. Co.,* 30 Mont. 323, 76 Pac. 701.)

In the case of *Nelson* v. *Boston & M. etc. Min. Co.,* 35 Mont. 223, 88 Pac. 785, this court approves the following statement of the law: "Among the risks and dangers of his employment * * * were the risks and dangers arising from negligence of the fellow-servants * * * in the employment of the defendant * * * and the defendant cannot be held liable for any act or acts of negligence of fellow-servants * * * which may have resulted in the injury complained of." That is declared in the case of *McIntosh* v. *Jones,* 36 Mont. 467, 14 L. R. A. (n. s.) 933, 93 Pac. 557, and again in the case of *Gregory* v. *Chicago M. & St. P. R. Co., supra.*

*Messrs. Harry* and *William Meyer,* for Respondent, submitted a brief; the latter argued the cause orally.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, plaintiff below, brought this action to recover damages for injuries received by him as the result of a fall of some scenery at the appellant's Broadway Theater, in Butte, on December 9, 1910. The complaint is in two so-called causes of action, the first charging a failure on the part of appellant, as plaintiff's employer, to exercise reasonable care to furnish him with a reasonably safe place in which to work, and the second charging a failure on the part of appellant to use ordinary care to employ reasonably competent fellow-servants. The answer joins issue upon all the matters alleged in the complaint which form the basis of recovery, but contains no affirmative pleas. The cause was tried to a jury which returned a general verdict for the respondent, and judgment was entered thereon. Motion for new trial was made and denied. The cause is now before us upon appeal from the judgment and from the order

denying the motion for new trial. In its brief, appellant assigns forty-nine alleged errors; of these twenty-seven are argued under special heads presenting certain propositions which we shall consider in their order.

It is to be noted at the outset that although the complaint is in the form of two causes of action, but one actionable event is set forth, to-wit, a fall of the scenery resulting in plaintiff's injuries. · The effect of the complaint, notwithstanding its form, [1] was to allege but one cause of action, arising out of the negligence of the appellant in the two particulars mentioned. These particulars are not pleaded as interdependent or concurring causes, as in the case of *Forsell* v. *Pittsburgh & M. Copper Co.,* 38 Mont. 403, 100 Pac. 218, and in fact were not such; hence the respondent was not required to establish both, but it was sufficient to take the case to the jury if the evidence presented tended to establish that negligence in either of these particulars caused his injuries. (*Westlake* v. *Keating Gold Min. Co., ante,* p. 120, 136 Pac. 38; *Beeler* v. *Butte & London Copper Dev. Co.,* 41 Mont. 465, 110 Pac. 528; *Hoskins* v. *Northern Pac. R. Co.,* 39 Mont. 394, 102 Pac. 988.)

1. The appellant's neglect to use reasonable care to furnish respondent with a reasonably safe place in which to work is [2] alleged to consist in these facts: that on the stage where the respondent was working "was a large amount of scenery necessary to be used and which was used" in presenting the performance then being given, "which said scenery was placed against the west wall of said building without any protection to prevent the said scenery from falling; that in order to hold said scenery and prevent same from falling, defendants in the exercise of ordinary care should have provided said stage with a stall or scenery-holder, or other proper or safe means of holding said scenery"; and because of its failure to do this, the scenery fell and injured him. Under this charge it became necessary for the respondent to maintain three propositions: that he was in the employ of the appellant at the time; that its failure to furnish means for holding the scenery was negligent;

and that because of this negligence the injuries occurred.   We cannot agree that the respondent has failed to sustain any of these propositions, because, though we may be unconvinced touching his claim of employment, that was a question of fact for the jury in the first instance and for the court on motion for new trial; both the jury and the court have said upon sufficient evidence, if believed, that the respondent was in the employ of appellant at the time.   We do agree, however, that [3] respondent failed in the two other necessary respects, and for these reasons: According to the evidence presented by the respondent, the Broadway Theater was ''a combination-house,'' that is to say, a theater in which traveling companies carrying their own scenery are accommodated.   In such houses the method in general use is to have a dock for all scenery not required in the production being staged, but to stack, or lean in packs, against the walls all the scenery required in the production and not actually in place upon the stage.   In leaning such scenery against the wall it is pulled out at the bottom so as to give it good footing and prevent its falling.   The scenery that fell upon respondent was so stacked or leaned against the wall of the theater, and it did not, and could not, fall upon him on account of that or because it was not kept in a holder.   It fell upon him because other employees, while straightening the pack to the perpendicular in the effort to get out a piece from the middle, lost control of it.   Quiescent, leaning against the wall, the pack was impotent for harm.   Nor when being straightened was there any danger, save from incompetent handling.   The reason it fell upon the respondent, as the witness Peiler stated, was that the men engaged in straightening it were drunk and did not have energy enough to hold it.   The respondent himself says: ''When the stage-hands are straightening up these scenery packs, to get a piece out, it does not occur very often, if a man is competent, that the scenery gets away from him and falls down on the stage.   *   *   *   As to whether I knew if it got toppled over it would fall down on the stage—well, it would not fall over if there was competent men there; there was no chance.''

The inference from the foregoing is inevitable that the method employed by appellant in keeping the scenery used or to be used in the production being staged—the method in general use among play-houses of like character—was in itself reasonably safe, and that the accident was not primarily due to it but to the action of fellow-servants.

2. The failure to exercise reasonable care to furnish respondent with reasonably skillful and competent fellow-servants is alleged to have consisted in the following facts: That the appellant "carelessly and negligently employed one William Cary as a stage-hand to assist in setting up scenery and removing the same from said stage"; that he was incompetent because "at the time of his employment he was intoxicated," and thereby rendered "incompetent and unfit to perform the services required of him"; that these facts were known to appellant, or in the exercise of ordinary care should have been known to it; that "by reason of his said incompetency and unfitness, as herein detailed," said Cary performed his work so carelessly and unskillfully that a portion of the scenery was thrown upon the respondent. It is vigorously insisted by the appellant that the respondent has not sustained these allegations by the proof. The respondent's narrative of the accident and the manner of its happening is substantially this: About a quarter past 9, while talking with the stage manager, Ki Leckie, their attention was called to Cary and one Petrucci, who were over at the pack of scenery on the west or back wall of the stage. Mr. Leckie saw Petrucci beckon, and turning to respondent said: "Go over there and see what they want." Respondent went over, saw Petrucci and Cary holding the scenery pack and ascertained they were desiring to get out "a pair of curtains." Respondent then turned around, started toward the stage manager to "tell him the condition of these men"; got about ten feet from the pack when it fell upon him. "Cary was then under the influence of liquor." The witness Peiler testified that Petrucci and Cary were both handling the pack; that it fell on the respondent "because they did not have energy enough to hold it; there was no

power back of them; they were drunk''; that the condition of
Cary ''was such that it could be noticed by anyone coming in
contact with him,'' but the witness could not say whether Cary
was intoxicated at the time he commenced work at the theater,
because the witness did not see Cary come in.   He had, however,
seen Cary employed on the stage of the Broadway Theater, prior
to the day of the accident, when Cary was intoxicated.   Vic.
McGrath testified to seeing Cary drink beer twice that day before
the show and once during the show, half an  hour before the
accident.   He says it was plainly noticeable at ten minutes to
8 that Cary had been drinking and was under the influence of
liquor; that he had seen Leckie hire  Cary for work on the Broad-
way stage as much as a dozen times before that, when Cary was
[4]   under the influence of liquor.   It must be conceded that
if we rigidly apply the proof to the allegations of the complaint,
there is no evidence that Cary was intoxicated at the time he
was hired, but he was noticeably in that condition for over an
hour before the accident, during which time the appellant's stage
manager was present; and this does charge the appellant with
keeping him employed when he was incompetent and unfit by
reason of his condition.   In this situation we have no reason to
doubt that the court would, on proper motion, have granted
the appellant all necessary relief on the ground of surprise, if
such could be fairly claimed.   But in view of the fact that no
claim of surprise is urged; that Petrucci, Cary and others fully
testified, denying Cary's intoxicated condition at any time dur-
ing the performance, we do not feel that at this time the case
[5]   should be reversed because of a variance so unsubstantial.
It was not only the duty of appellant to use ordinary care to
employ, in the first instance, but to use like care to keep em-
ployed, competent fellow-servants for respondent.   If certain
witnesses are to be believed, it did not do this, and the accident
happened as the result.   The argument of counsel for appellant
that these witnesses, particularly the respondent himself, were
not entitled to full credit, is quite forcible and convincing, but

that is not for us. They were believed apparently, and upon their testimony a case was made sufficient to go to the jury.

3. Under "Argument III, Errors XXI and XXII," complaint is made because the court gave instructions numbered 11 and 12, which, it is said, were "prejudicially erroneous in failing to take into consideration the assumption of risk, the negligence of a fellow-servant, and the proximate cause of the injury." Errors XXI and XXII assign the giving of instructions C and H, and we do not find that the court gave any in- [6] structions numbered 11 and 12. The only instructions 11 and 12 that appear in the record were requests of appellant which were refused, and properly so, because they do not at all advise the jury that the person sought to be charged with as- sumption of risk must have appreciated and realized the danger. Instructions C and H, however, to which the argument is really directed, do omit all mention of assumption of risk, and instruc- tion H does fail to categorically charge that the incompetency of Cary, by reason of intoxication, must have been the proximate cause of the injury. But we do not follow the argument that these instructions "should embody these elements (assumption of risk, negligence of fellow-servants, proximate cause), in order to assist the jury in determining the amount of damages," or that either instruction is wrong, "because it fails to tell the jury that in arriving at the amount of damages it must take into consideration the assumption of risk and negligence of fellow- servants." These things do not go to the amount of damages but to the utter defeat of plaintiff's entire claim. Moreover, [7] assumption of risk, and the negligence of fellow-servants are matters of defense, unavailing if not pleaded—as they were not—unless affirmatively appearing from the plaintiff's own [8] pleadings or proof. Some effort is made to show that assumption of risk does arise from respondent's own testimony; but it cannot be inferred from anything he said that he at any time before going over to Cary, either knew that Cary was in- toxicated or appreciated any danger from that fact; on the contrary, it does appear that when he got to the pack of scenery

he then noticed Cary's condition, refused to assist on that account, and was making his way out of whatever danger there was, when the scenery fell.  As to the fellow-servant doctrine, it is out of the case for the  further reason that while the respondent pleads the injury to have been due to the act of a fellow-servant, it also charges that act to the negligence of appellant in furnishing a fellow-servant who was incompetent from intoxication.  In passing, we add that the failure of the court in instruction H to specifically charge that the incompetency of Cary, because of intoxication, must have been the proximate cause of the injury, is entirely cured elsewhere in the charge, notably in instruction No. 10, offered by the appellant.

Instruction C is further attacked because it advises the jury [9] that the employer must in all cases indemnify his employee for the "losses" caused by the former's want of ordinary care. Taking the instructions as a whole, we think it reasonably plain that the term "losses" was used in the sense of legal damages, and that its use did not make the instruction in question so meaningless as to confuse the jury.

4. It is further urged that the verdict is contrary to law, as in defiance of instructions 5 and 6.  These instructions were [10] to the effect that before the plaintiff could recover on his first cause of action, it must be established that the defendant, in the exercise of ordinary care, should have provided the stage with a stall or scenery-holder to hold the scenery, and that its failure to do so was the proximate cause of the injury.  It is true, as stated above, that there was no evidence to support the allegation of negligence in this regard, but the verdict is a general one, and as there was sufficient evidence to support negligence in the other particular alleged, we cannot hold the verdict to be against the law on this account.

No argument is presented in the brief to the effect that the giving of these instructions, or the giving of any instructions based upon the so-called first cause of action, was error, and in fact the particular instructions 5 and 6 were given at the request of appellant.

5. The luminous discussion under the head "Argument VI," [11] in appellant's brief, amounts to nothing more than to a claim that the jury should have discredited the plaintiff and his witnesses and should have received as the truth of the matter the narrative of events given by the witnesses for the defendant. If the case were before us upon appeal from an order granting a motion for new trial, as in *Mullen* v. *City of Butte,* 37 Mont. 183, 95 Pac. 597, or from a judgment based upon an order of nonsuit, as in *Escallier* v. *Great Northern Ry. Co.,* 46 Mont. 238, 127 Pac. 458, the consideration urged might be pertinent. As it is, we are powerless to interfere.

The other assignments of error argued in the brief are disposed of by what we have said above. We find nothing in the record to warrant a reversal. The judgment and order appealed from are therefore affirmed.

*Affirmed.*

Mr. Chief Justice Brantly and Mr. Justice Holloway concur.

### On Motion for Rehearing.

(Submitted November 17, 1913.  Decided January 2, 1914.)

MR. JUSTICE SANNER delivered the opinion of the court.

The principal ground of the motion for rehearing is that, since the complaint alleged the failure of defendant to furnish competent fellow-servants consisted in the fact that Cary was intoxicated "at the time of his employment," a recovery was not permissible in the absence of evidence to show his intoxication at the time he was hired, notwithstanding the evidence that for over an hour prior to the accident, during which time the stage manager was present, Cary was kept employed in a noticeably intoxicated condition. We thought, and still think, the variance too unsubstantial to justify a reversal. (Rev. Codes, secs. 6585, 6593.) To this it may be added that the elaborate motions for nonsuit addressed to the trial court do not

urge either a failure of proof or a variance in regard to Cary's intoxication; that the evidence on this point was presented without objection, and that under the established rule of this jurisdiction the complaint will be treated on appeal as amended so as to make the evidence proper and effective. In other words: [12] "Where a cause is tried upon the theory that the pleadings are sufficient to admit the proof for the purpose for which it is offered, the losing party will not be heard in the appellate court for the first time to assert that there was a variance between the pleadings and the proof." (*O'Brien* v. *Corra-Rock Island Min. Co.,* 40 Mont. 212, 105 Pac. 724; *Galvin* v. *O'Gorman,* 40 Mont. 391, 396, 106 Pac. 887; *Archer* v. *Chicago M. & St. Paul R. Co.,* 41 Mont. 56, 71, 137 Am. St. Rep. 692, 108 Pac. 571; *Post* v. *Liberty,* 45 Mont. 1, 17, 121 Pac. 475; *Lackman* v. *Simpson,* 46 Mont. 518, 525, 129 Pac. 325; *Moss* v. *Goodhart,* 47 Mont. 257, 131 Pac. 1071.)

The motion for rehearing is denied.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SANNER concur.