STEVENS, APPELLANT, *v.* HENNINGSEN PRODUCE CO., RESPONDENT.

(No. 3,730.)

(Submitted January 26, 1917. Decided February 24, 1917.)

[163 Pac. 470.]

*Personal Injuries—Master and Servant—Assumption of Risk— Burden of Proof.*

Personal Injuries—Master and Servant—Assumption of Risk—Burden of Proof.
1. Where plaintiff's own evidence in a personal injury action furnishes the basis for no other inference than that he assumed the risk, he cannot recover unless he exculpates himself, and this whether the defense is pleaded or not.

[As to risks assumed by servant, see note in 52 Am. Rep. 737.]

Same—Assumption of Risk—Case at Bar.

2.  Plaintiff was ordered by his employer into the basement of defendant's warehouse to remove a piece of timber which prevented a freight elevator from running at a time when a fire was discovered in the building.  When the order was made, neither plaintiff nor defendant knew the nature of the obstruction, and plaintiff, being thoroughly familiar with the mechanism of the elevator, was left the exclusive judge of the course he should pursue.  He placed his foot in a position in which he knew it might be, as it subsequently was, injured by the descending counterweights.  *Held* that he assumed the risk.

Same—Emergency Rule—Inapplicability.

3.  Plaintiff, who acted deliberately and without the impulse of momentary excitement when he was injured (see paragraph 2, *supra*), was not excusable under the rule that where an employee receives injury while rescuing his employer's property, he will not be held guilty of contributory negligence.

*Appeal from District Court, Silver Bow County; J. J. Lynch, Judge.*

ACTION by Robert W. Stevens against the Henningsen Produce Company.  Judgment for defendant, and plaintiff appeals from it and an order denying his motion for a new trial. Affirmed.

*Mr. William Meyer,* for Appellant, submitted a brief and argued the cause orally.

The court's action in sustaining the objection to the question whether it was customary to move the elevator at any time without a signal was error.  (*Crooker* v. *Pacific Lounge etc. Co.,* 34 Wash. 191, 75 Pac. 632; *Leque* v. *Madison Gas etc. Co.,* 133 Wis. 547, 113 N. W. 946; *Leary* v. *Anaconda Copper Min. Co.,* 36 Mont. 157, 92 Pac. 477.)

It was proper for plaintiff to show that he would not have gone into the place where he was injured if he had not been ordered so to do by his superior officer.  (4 Thompson on Negligence, secs. 4630, 4631; White's Supplement to Thompson on Negligence, sec. 4630; *Dallemand* v. *Saalfeldt,* 175 Ill. 310, 67 Am. St. Rep. 214, 48 L. R. A. 753, 51 N. E. 645; *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; 4 Labatt on Master & Servant, sec. 1362; *Cleveland, C. C. & St. P. Ry. Co.* v. *Sur-*

*rells,* 115 Ill. App. 615; *Illinois Steel Co.* v. *Brenshall,* 141 Ill. App. 36; note, 30 L. R. A. (n. s.), pp. 442–450.)

The true rule of law in cases where an employee is injured while acting in an emergency in an endeavor to save the property of his master was laid down in the case of *Hollenback* v. *Stone & Webster Eng. Corp.,* 46 Mont. 559, 129 Pac. 1056; also recently in the case of *Nelson* v. *Northern Pacific Ry. Co.,* 50 Mont. 516, 148 Pac. 392. (See, also, *Da Rin* v. *Casualty Co.,* 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164, 108 Pac. 653; *Bracey* v. *Northwestern Imp. Co.,* 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; 4 Thompson on Negligence, sec. 4682; 5 *Id.,* secs. 5439, 5440; *Central R. R. & B. Co.* v. *Chapman,* 96 Ga. 769, 22 S. E. 273.) "A servant is not ordinarily guilty of contributory negligence, it would seem, where injured while making a reasonable effort to save the property of his master in an emergency." (2 Bailey on Master & Servant, sec. 501; *Prophet* v. *Kemper,* 95 Mo. App. 219, 68 S. W. 956; *Perrier* v. *Dunn Worsted Mills,* 29 R. I. 396, 71 Atl. 796; *Barry* v. *Hannibal St. Joe R. R. Co.,* 98 Mo. 62, 14 Am. St. Rep. 610, 11 S. W. 308; *Fox* v. *Chicago, St. P. & K. C. Ry. Co.,* 86 Iowa, 368, 17 L. R. A. 289, 53 N. W. 259; *Terre Haute I. R. Co.* v. *Fowler,* 154 Ind. 682, 48 L. R. A. 521, 56 N. E. 228; *Pullman Palace C. Co.* v. *Laack,* 143 Ill. 242, 18 L. R. A. 215, 32 N. E. 285; 3 Labatt on Master & Servant, sec. 1277; *Harding* v. *Ostrander Ry. & Timber Co.,* 64 Wash. 224, 116 Pac. 637.)

The negligence of the defendant in failing to inclose the weight-guide was the proximate cause of plaintiff's injuries. (*Mize* v. *Rocky Mountain Bell Tel. Co.,* 38 Mont. 521, 129 Am. St. Rep. 659, 16 Ann. Cas. 1189, 100 Pac. 973.) In this connection it should not be overlooked that the authorities do not hold that the proximate cause is not necessarily the last cause that produces a result, but that it is that cause which produces, or actively aids in producing, the same. In other words, it is that cause which concurs with the last cause to produce the result. (*Missouri K. & T. Ry. Co.* v. *Ryon* (Tex. Civ.), 177 S. W. 525; *Frederick* v. *Hale,* 42 Mont. 153, 112 Pac. 70; *Lyon* v. *Chicago,*

*M. & St. P. Ry. Co.,* 45 Mont. 33, 121 Pac. 886; *A. M. Holter Hardware Co.* v. *Western M. & W. T. Co.,* 51 Mont. 94, L. R. A. 1915F, 835, 149 Pac. 490, 10 N. C. C. A. 316; *Mathis* v. *Granger Brick & Tile Co.,* 85 Wash. 634, 149 Pac. 3; *Pullman Palace Car Co.* v. *Laack,* 143 Ill. 242, 18 L. R. A. 215, 32 N. E. 285.) A case somewhat similar to the case at bar is that of *Mullin* v. *Northern Mill Co.,* 53 Minn. 29, 55 N. W. 1115; and one which we believe is on all-fours with this case, is *Siegel, Cooper & Co.* v. *Trcka,* 218 Ill. 559, 109 Am. St. Rep. 302, 2 L. R. A. (n. s.) 647, 75 N. E. 1053. (See, also, *Balzer* v. *Waring,* 176 Ind. 585, 48 L. R. A. (n. s.) 834, 95 N. E. 257.)

*Messrs. Kremer, Sanders & Kremer,* for Respondent, submitted a brief; *Mr. L. P. Sanders* argued the cause orally.

Where no sudden, imminent or impending peril confronts a person, and he admits that all of the surrounding circumstances and conditions were fully known to him, he may be held to have assumed the risk. As pointing out the logical reason for distinguishing between the rule that relieves a servant from the charge of contributory negligence but does not abate the defense of assumed risk, see 3 Labatt, 3227, 3513. Where the master and servant are possessed of equal knowledge of defects and danger, or where they are equally ignorant thereof, the servant assumes the risk; and the same is true where the servant has better means of knowledge than the master. (26 Cyc. 1202; 8 Thompson on Negligence, sec. 4643.) If a servant places himself in a position where he is injured, his precedent actions must be considered, and if they show lack of care on his part, he is not relieved from the claim that he was guilty of contributory negligence. (*Dummer* v. *Milwaukee Elec. Ry. etc. Co.,* 108 Wis. 589, 84 N. W. 853; *Richmond Ry. etc. Co.* v. *Hudgins,* 100 Va. 409, 41 S. E. 736; *Chattanooga Elec. Ry. Co.* v. *Cooper,* 109 Tenn. 308, 70 S. W. 72; *Hess* v. *Baltimore etc.,* 28 Pa. Sup. Ct. 220; *Chicago etc. R. Co.* v. *Corson,* 198 Ill. 98, 64 N. E. 739.) The doctrine of sudden emergencies may not be invoked with strictness where one voluntarily and wrongfully

puts himself in a dangerous position. (*Birmingham Ry. etc. Co.* v. *Fox*, 174 Ala. 657, 56 South. 1013.)

There was no element of imminent danger confronting appellant at any time; if there was, it was created by the plaintiff himself, and the rule finds no application. (*Chesapeake & O. R. Co.* v. *Hall's Admr.*, 109 Va. 296, 63 S. E. 1007.) The fact that he received a general order "to go down there and fix it or get it fixed" does not render such an order one that may be held negligent. He was master of his own movements. He was not ordered to hurry, but even so, an order to hurry does not render an order a negligent one. (*Coyne* v. *Union Pac. R. Co.*, 133 U. S. 370, 33 L. Ed. 651, 10 Sup. Ct. Rep. 382; *Sauer.* v. *Union Oil Co.*, 43 La. Ann. 699, 9 South. 566; *English* v. *Chicago etc. R. Co.*, 24 Fed. 906; *Peterson* v. *Chicago, R. I. & P. R. Co.*, 149 Iowa, 496, 46 L. R. A. (n. s.) 766, 128 N. W. 932.) The order of Henningsen was a general one. (*Standard Cement Co.* v. *Minor*, 54 Ind. App. 301, 100 N. E. 767.) There is no evidence in this case that appellant was sent into a position of danger to perform a dangerous task. But even this would not raise an inference of negligence from the order given. (*Turner* v. *Southern Pacific Co.*, 142 Cal. 580, 76 Pac. 384; *Spencer* v. *Ohio etc. Ry. Co.*, 130 Ind. 181, 29 N. E. 915; *Slota* v. *Albert Lewis Lumber etc. Co.*, 215 Pa. 434, 64 Atl. 632.)

The rule laid down in *Morris* v. *Lake Shore etc. Ry. Co.*, 148 N. Y. 182, 42 N. E. 579, under a contention that plaintiff was guilty of contributory negligence, would find application here. (See, also, *Condiff* v. *Kansas City etc. R. Co.*, 45 Kan. 256, 25 Pac. 562; *Farrell* v. *Tatham*, 36 App. Div. 319, 55 N. Y. Supp. 199; *Cook* v. *Johnston*, 58 Mich. 437, 55 Am. Rep. 703, 25 N. W. 388; *Richfield* v. *Michigan Cent. R. Co.*, 110 Mich. 406, 68 N. W. 218.)

Failure to "inclose the said portion of said elevator shaft in the basement where said counterweights descended" is the negligence charged. It appears that it would have been impracticable to nail boards on the inside of the guide-posts. There is no evidence that such an inclosing would have been prac-

ticable. Ignoring for the moment the fact that it was not customary, it was incumbent for appellant to show that it was practical. (*Tyma* v. *Tarant F. Co.,* 144 Ill. App. 454; *Glockner* v. *Hardwood Mfg. Co.,* 109 Minn. 30, 18 Ann. Cas. 130, 122 N. W. 465, 123 N. W. 807; *Shaver* v. *J. Neils L. Co.,* 109 Minn. 376, 123 N. W. 1076; *Wynkoop* v. *Ludlow Valve Mfg. Co.,* 196 N. Y. 324, 30 L. R. A. (n. s.) 36, 89 N. E. 827.)

The duty of the employer to guard machinery is restricted to such dangers as the servant is reasonably expected to come in contact with in the ordinary course of events. (*Powalske* v. *Cream City Brick Co.,* 110 Wis. 461, 86 N. W. 153; *Vigo Cooperage Co.* v. *Kennedy,* 42 Ind. App. 433, 85 N. E. 986; *Valparaiso Lighting Co.* v. *Letherman,* 46 Ind. App. 303, 92 N. E. 346.) "An injury which could not have been foreseen or reasonably anticipated as a probable result of an act of negligence is not actionable, and such an act is either the remote cause or no cause whatever of the injury." (*Cole* v. *German Savings & Loan Soc.,* 124 Fed. 113, 63 L. R. A. 416, 59 C. C. A. 593.) "A wisdom born after the event is the cheapest of all wisdom. Anybody could have discovered America after 1492." (*United States* v. *American Bell Tel. Co.,* 167 U. S. 224, 261, 42 L. Ed. 144, 17 Sup. Ct. Rep. 809.) "We are all very wise in finding out the causes which have led to particular events after the events have taken place." (*Marshall* v. *Union Ins. Co.,* 2 Wash. C. C. 357, 16 Fed. Cas. No. 9133.) "Wisdom that comes from the contemplation of an event after it has happened is of easy acquirement." (*Boland* v. *Combination Bridge Co.,* 94 Fed. 888, 893.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for a personal injury suffered by plaintiff during the course of his employment by defendant. The trial in the district court resulted in a judgment in favor of the defendant after an order sustaining its motion for a nonsuit.

Plaintiff has appealed from the judgment and an order denying his motion for a new trial.

The following narrative of facts is gathered from the complaint: On January 11, 1912, the defendant was conducting a warehouse and cold-storage business in the city of Butte. It occupied a brick building consisting of three stories and a basement. Besides stairways connecting the several floors, there was an elevator for conveying goods to and from them. The elevator was installed in a shaft and was moved by a cable and pulley. It was balanced by counterweights, which ascended and descended between two guides near the middle of the south side of the shaft. Plaintiff was in the employ of the defendant as superintendent of its business, and as such had charge of the building and defendant's employees. A. P. Henningsen was its president. Discovery having been made that the building was on fire on the basement floor, Henningsen directed the plaintiff to save as many of the goods stored in the building as possible. Assisted by the other employees he proceeded to remove such of them as he could without danger to his assistants or himself. To accomplish this, they loaded the goods upon trucks and removed the loaded trucks by means of the elevator to the first or street floor, and thence to the street. When this work was begun on the basement floor, it was discovered that because of an obstruction in the pit or excavation at the bottom of the shaft, the deck would not descend to the level of the floor, or "land," so that the trucks could be loaded upon it. Upon investigation this was found to be a piece of two by four timber standing on end at one side of the shaft. Seeing that this obstruction must at once be removed, the plaintiff ordered the elevator to be moved to the second floor and held there until he could effect the removal. The elevator was raised as directed. While plaintiff was reaching into the shaft to remove the timber, the elevator was moved upward by someone without warning, with the result that the counterweights descended and struck plaintiff, inflicting the injury complained of—a compound fracture of his right leg, besides bruises upon his back and head. The negligence

charged is: "That in the construction of said elevator shaft and particularly that portion of the same where the counterweights went up and down, according to the position of the said elevator, the said defendant carelessly and negligently failed and neglected to inclose that portion of said elevator in the basement on the south side where the said counterweights ascended and descended. * * * " The defenses relied on were a denial of negligence by defendant, and affirmative pleas that plaintiff assumed the risk, and that he was injured by the negligence of his fellow-servants. The motion for nonsuit was made upon several grounds. As we view the evidence, however, though we assume that defendant was guilty of negligence in the particular alleged—which is by no means clearly established by the proof—the nonsuit was proper on the ground that plaintiff's own evidence discloses a case of assumed risk.

The rule is settled in this jurisdiction that this defense can [1] be availed of only by special plea (*Longpre* v. *Big Blackfoot Milling Co.*, 38 Mont. 99, 99 Pac. 131; *Mosher* v. *Sutton's New Theater Co.*, 48 Mont. 137, 137 Pac. 534), and that the question whether the plaintiff did assume the risk is generally for the jury. An exception to this general rule is where the plaintiff's own evidence furnishes a basis for the single inference that he assumed the risk. The burden is then upon him to exculpate himself or he cannot recover, and this whether the defense is pleaded or not. (*Longpre* v. *Big Blackfoot Milling Co., supra.*) The exception is founded upon the principle that in order to recover for an alleged wrong of his master, the servant must make out a case which does not afford a substantial basis for the inference that he has exculpated the master by taking responsibility upon himself.

The evidence establishes these facts: The fire was discovered [2] about 2:30 o'clock in the afternoon. The plaintiff was ordered by Henningsen to get the employees together and remove the goods from the building. The plan adopted was to load them on trucks and lower or raise the trucks to the main or street floor in order to reach railroad cars standing on a

siding used by the defendant. All goods had been removed, except those stored in the basement. It was then about 6 o'clock. The building was constructed with double walls, leaving air spaces between. The fire had originated in one of these air spaces, and by the efforts of the firemen had been prevented from spreading to other parts of the building or to the goods. When the rescuers began work in the basement, it was found that an obstruction in the elevator shaft prevented the proper placing of the deck for the loading of trucks upon it. This was made known to Henningsen by the plaintiff, both being then upon the street floor. The plaintiff testified as to what then occurred as follows: ''I told him that a piece of timber or something had gotten underneath the elevator and they couldn't load it up. He asked me, he says, 'Well, can't you get it fixed?' Mr. Henningsen asked me what was the matter, and I told him there was something in the elevator pit, and that the elevator would not go down to the bottom to land, and we couldn't get the goods on, and he said, 'Can't you fix it?' He said, 'Go down there. We have to get the goods out of the way. We don't know what this fire is going to amount to.' Now, I was just about the landing of the stairway, and I told him I could, and he made the remark, 'It is a hell of a time for the elevator to get out of order.' '' The plaintiff went immediately to the basement floor to get the elevator in order. The shaft was between six and seven feet square, and was built about corner posts. On the west it was open, so that one approaching from that direction could step from the basement floor into the pit or sump, which was about sixteen inches in depth. At that time the pit contained several inches of water. On the east the shaft was boarded up, but there was a doorway opening into it. The floor of the basement on this side was higher than on the west side, so that the bottom of the pit was about thirty inches below its level. On the north the shaft was boarded up. On the south it was open except for the space occupied by the guides for the counterweights, which had their footings on the lip of the pit somewhat to the west of the center. Goods were piled

on that side so near to the shaft that entrance could not be effected from that direction. There was a sixteen candle-power electric light so placed that it lighted the shaft pit sufficiently to enable one approaching from the west to see an obstruction in it. The piece of timber was found by plaintiff standing on end, and leaning against the lip of the pit on the east side in front of the door. It could have been reached easily and without any danger from the counterweights, by means of the door on the east side or by stepping into the pit. Instead of pursuing either of these courses, the plaintiff first called to those who were in charge of the elevator above to hold it until he gave the signal. Without waiting for a response he put his left foot on the west lip of the pit, his right upon the south between the guides, and leaned toward the east to reach the timber. While he was in that position, someone—the evidence does not disclose who—moved the elevator upward with the result that plaintiff's right leg was caught by the descending counterweights and injured as alleged. Plaintiff had been in the employ of the defendant about thirteen years, having worked for it as laborer and helper, and as traveling agent and superintendent. He had had experience as stationary engineer, had operated compressors, was familiar with machinery, and knew the mechanism of the elevator. He knew that when it was moved, the counterweights would move; fully realized that the course he was pursuing was perilous, and appreciated the fact that he might suffer injury if the elevator was moved. This is put beyond doubt by the fact that when he went to the shaft he ordered the elevator to be held until he gave the signal, and by his statement that he relied on the order thus given by him being obeyed. Evidently this order, if heard by the men above, was understood to mean that the elevator should not be lowered. However this may have been, under the circumstances the only conclusion permissible is that he deliberately took a chance that he would not be injured, for he did not claim that he was hurried or that his attention was distracted by the emergency of the fire, nor did he offer to explain why he pursued the course he did. The

only inference possible is that he did it to avoid stepping into the water or the necessity of passing around to the east side of the elevator shaft. At the time plaintiff went down by the direction of Henningsen, neither knew what was the cause of the trouble. When he discovered it, being familiar with the operation of the elevator and having observed the conditions and circumstances confronting him at the moment, his knowledge of the danger was superior to that of Henningsen, and he thus became the exclusive judge as to the course he should pursue. He thus assumed the risk, and hence cannot charge his injury to the negligence of defendant, if it was negligent in failing to inclose or box in the counterweights. (*Leary* v. *Anaconda C. Min. Co.*, 36 Mont. 157, 92 Pac. 477; *Fotheringill* v. *Washoe Copper Co.*, 43 Mont. 485, 117 Pac. 86; *Molt* v. *Northern Pac. Ry. Co.*, 44 Mont. 471, 120 Pac. 809; 26 Cyc. 1202; Bailey on Personal Injuries, sec. 459; 8 Thompson on Negligence, 4643.)

Counsel insist that the evidence presents a case of emergency [3] in which the plaintiff was injured in an endeavor to save the property of his master, and cite and rely upon these cases: *Da Rin* v. *Casualty Co.*, 41 Mont. 175, 137 Am. St. Rep. 709, 27 L. R. A. (n. s.) 1164, 108 Pac. 649; *Bracey* v. *Northwestern Imp. Co.*, 41 Mont. 338, 137 Am. St. Rep. 738, 109 Pac. 706; *Hollenback* v. *Stone & Webster E. Corp.*, 46 Mont. 559, 129 Pac. 1058, and *Nelson* v. *Northern Pac. Ry. Co.*, 50 Mont. 516, 148 Pac. 388. They have no application. In the first place, they deal altogether with the rule governing the defense of contributory negligence when a rescuer is injured in an attempt to save the life of another in the face of impending peril to the latter brought about by the negligence of the defendant, or to the case of an employee injured while endeavoring to save the property of his employer when there is imminent peril of its loss or destruction. In the second place, the evidence shows affirmatively that the plaintiff was not at the time of the accident confronted by impending peril of loss to defendant of its property moving him to pursue the course he did, but that he acted deliberately and without the impulse of momentary excitement.

Counsel challenge the propriety of several rulings of the trial court in excluding evidence. The contentions made in this behalf are without merit, for the double reason that most of the excluded evidence was subsequently admitted without objection, and that in view of the conclusions stated above the evidence excluded finally would not have removed the imputation to plaintiff that he assumed the risk.

The judgment and order are affirmed.

*Affirmed.*

Mr. Justice Sanner and Mr. Justice Holloway concur.

