KOTSAKIS, RESPONDENT, *v.* WILLIAMSON, APPELLANT.

(No. 5,581.)

(Submitted December 8, 1924. Decided December 27, 1924.)

[231 Pac. 1104.]

*Conversion—Partnership—Sale of Property by One Partner— Liability of Purchaser—Trial—Evidence—Value—Theory of Case—Variance—When Question not Reviewable.*

Trial—Theory of Case—Variance—When Question not Reviewable.
1. Where appellant acquiesced in the trial of his case on a certain theory and did not raise the question of variance by objection to evidence or instructions given on that theory, he will not be heard to raise the question for the first time on appeal.

Conversion—Value—Evidence—Sufficiency to Go to Jury.
2. Where one of plaintiff's witnesses in an action in conversion testified that the value of the property at the time it was bought was from $3,600 to $4,000, and defendant's witnesses placed its value at the time of its taking at from $400 to $700, the evidence was sufficient to go to the jury on the question of value.

Trial — Evidence Improperly Admitted — Error Cured by Instruction Withdrawing It.
3. Error in improperly admitting evidence may be cured by an instruction directing the jury to disregard it.

Same—When Appellant not Entitled to Claim Prejudice by Admission of Evidence.
4. Where defendant without objection permitted plaintiff to testify to certain facts and then in his own behalf gave substantially the same testimony, he is not in a position to assert on appeal that he was prejudiced by the admission of the evidence in the first instance.

Conversion—Partnership Property Sold by One Partner Without Consent of Copartner—Liability of Purchaser.
5. Under section 7998, Revised Codes of 1921, one partner has no authority to dispose of the whole of the partnership property at once, and if so sold, the nonconsenting partner has his action against the purchaser as for a conversion.

*Appeal from District Court, Toole County; John J. Greene, Judge.*

ACTION by Mrs. K. W. Kotsakis against J. W. Williamson. Judgment for plaintiff and defendant appeals. Affirmed.

5. Right of action at law between partners, based on conversion of firm property, see note in **L. R. A.** 1918F, 1125.

*Messrs. Clinton & Thorne* and *Messrs. Henderson & Knaack,* for Appellant, submitted a brief; *Mr. R. L. Clinton* argued the cause orally.

*Messrs. Dillavou & Moore* and *Messrs. Tansil & Smith,* for Respondent, submitted a brief; *Mr. John B. Tansil* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

On November 23, 1922, the defendant leased to Peter Lucas a certain building in Shelby, which he agreed to erect and have ready for occupancy not later than January 25, 1923, for a period of two years at a monthly rental of $150, payable in advance.

On February 2, 1923, at Billings, Lucas, the plaintiff, Mrs. George Checuras, and John Stamos, having in contemplation the opening of a restaurant in the building which had been leased by Lucas, entered into a partnership agreement which provided that Lucas and the plaintiff were each to contribute one-third of the capital required, while Mrs. Checuras and Stamos were each to contribute one-sixth, and the profits of the business were to be divided amongst the parties in the above portions. This agreement recited amongst other things: "It is further mutually agreed by and among all of the parties hereto that whereas the lease upon the premises upon which said café is situate now stands in the name of said Peter Lucas, that the latter shall hold the same for the benefit of all the parties hereto, and that this agreement shall continue during the whole period of said lease agreement."

The specific amount which each of the partners was to contribute was not mentioned, but it appears that the plaintiff was the owner of the necessary furniture, fixtures, dishes and cutlery for the equipment of the restaurant, which were stored in a warehouse at Billings. This property was turned in to

the partnership by the plaintiff and, with the lease from the defendant to Lucas, constituted all of its assets.

John Stamos was unable to contribute the amount which he had agreed to put into the partnership, and did not figure in the transaction after signing the agreement. Mrs. Checuras seems to have put in some money, but subsequently, at a time not disclosed, got it back, and she likewise disappeared from the transaction.

About the middle of February, 1923, the restaurant equipment was shipped from Billings to Shelby, in the name of Peter Lucas. Upon its arrival at the latter place it was placed in storage, the leased building not being ready for occupancy at that time.

After the building was completed, in the latter part of March, Lucas moved the equipment in, but was unable to open up the business for lack of funds, and tried, unsuccessfully, to borrow $500 from the defendant for that purpose. About that time George Checuras, husband of the Mrs. George Checuras named in the partnership agreement, appeared upon the scene, claiming that Lucas owed him $500, and threatened to institute legal proceedings to enforce its payment. Lucas admitted he owed Checuras this money but was unable to pay it. At that time there was due to the defendant as rental upon the leased building the sum of $150, which Lucas was not able to pay. Defendant and Lucas then entered into an arrangement by which, in consideration of $50, Lucas surrendered the lease and gave defendant a bill of sale of the restaurant equipment, the defendant agreeing to sell the equipment and out of the proceeds pay certain debts of Lucas. The defendant took possession of the property under the bill of sale and subsequently, through his agent B. P. Radigan, sold it to one Henry C. Brown, as the evidence shows, for $1,500 and paid or assumed obligations of Lucas to the extent of $1,510. After Lucas obtained the $50 from the defendant he left Shelby, and was not heard from further.

At the time the lease between defendant and Lucas was negotiated, William Kotsakis, husband of the plaintiff, and —— Stamos, a brother of the John Stamos mentioned in the partnership agreement, were present and participated therein, and there is evidence tending to show that the defendant knew that, while the lease was taken in the name of Lucas, his name was inserted as lessee as a matter of convenience, and that he held the same for the benefit of the other parties, who later on entered into the partnership arrangement.

Subsequent to the time when defendant took over the restaurant equipment under the bill of sale from Lucas, the plaintiff demanded a half-interest therein from him, which demand was refused, and thereupon she instituted this suit to recover the value of her interest. The complaint is in the ordinary form for an action of conversion. The defendant answered, denying that plaintiff had any interest in the property. The case was tried before a jury, which returned a verdict in favor of the plaintiff for the sum of $1,200, upon which judgment was entered, and from which the defendant has appealed.

Appellant's first specification of error is: "There is a material [1] variance between the allegations of the complaint and the proof offered as to partnership, if any partnership was proven."

The complaint alleges that, during the times mentioned, the plaintiff, Peter Lucas, Mrs. George Checuras and John Stamos were partners, for the purpose of carrying on a restaurant business in Shelby. As above indicated, it was shown at the trial that John Stamos never made payment of the amount which he was to contribute to the partnership under the agreement, and was not further considered therein, and likewise that Mrs. George Checuras got back what she had contributed and was not considered as a partner in the transaction. This testimony was introduced without objection.

Without objection on the part of appellant the court instructed the jury: "If you believe from a preponderance of

72 Mont.—11

the evidence that the plaintiff and Peter Lucas were associated together as copartners for the purpose of engaging in and carrying on a restaurant business in the city of Shelby, Montana, and as such partners were the owners of and in possession of the personal property'' described in the complaint, ''and that said personal property  *  *  *  comprised the whole of the partnership property, and that the sale of said personal property by said Peter Lucas to the defendant, J. W. Williamson, was without the consent of the plaintiff, then and in that event the said J. W. Williamson obtained no title to plaintiff's interest in said personal property, and your verdict must be for the plaintiff.'' Two other instructions of like import (Nos. 7 and 11) were also given by the court without objection. The question of a variance between the allegations of the complaint and the proof was not raised by any objection to the testimony or to the instructions given.

The defendant, having acquiesced in the trial of the case on the theory that plaintiff and Lucas alone were interested in the property as partners, is not now in a position to assert that there is a variance between the pleading and proof, as the question of variance will not be considered when raised for the first time in this court. (*Kalispell Liquor etc. Co.* v. *McGovern,* 33 Mont. 394, 84 Pac. 709; *Mosher* v. *Sutton New Theater Co.,* 48 Mont. 137, 149, 137 Pac. 534.)

Appellant's second assignment of error is: ''There is no [2] competent proof offered by plaintiff as to the reasonable value of the property alleged to be converted at the time of the alleged conversion at Shelby by the defendant.'' At the trial William Kotsakis, husband of the plaintiff, as a witness in her behalf, after having duly qualified to give an estimate of the value of property of the character involved, testified as follows: ''Q. And from your experience, Mr. Kotsakis, what was the reasonable market value of this stuff that went into this building, at the time it reached here? A. Well, I paid $4,000 for it when it was new. Mr. Clinton: Move to strike his answer, what he paid for it new, as not being competent proof

as to the value of it at the time. The Court: It has a bearing on the value, however. Mr. Clinton: Not what he paid for it. The Court: Overrule the objection. A. The value of it at that time was between $3,600 and $4,000."

On behalf of the defendant, Eugene Malletts testified that the fixtures were worth about $700 in the building, and Patrick Connelly estimated that $400 or $500 would be a good price for them. This testimony was sufficient to send the case to the jury on the question of value, and under the rule frequently announced by this court that when there is a substantial conflict in the testimony the verdict of the jury upon a disputed question of fact will not be disturbed, we are of the opinion that this assignment of error is not well taken.

Appellant's third specification of error is: That the "court [3] erred in permitting a lease from defendant to Peter Lucas to be offered in evidence over defendant's objection, and in permitting plaintiff to show that defendant received $1,000 bonus for a new lease and a $50 per month raise in the rental, as it prejudiced the jury in arriving at their verdict."

In reference to the first part of this specification: By her complaint the plaintiff has claimed damages from the defendant by reason of an alleged "conversion" of the lease from herself to Peter Lucas. In instruction No. 1, after advising the jury of the allegations of the complaint and of the nature of the cause of action which she set forth against the defendant, the court said: "The plaintiff, in addition to the facts set forth above, has claimed to be the owner of a certain lease upon certain restaurant property here in Shelby and alleged that the defendant converted this lease. As to this allegation in the plaintiff's complaint, and as to all evidence introduced in support thereof, the same is withdrawn from your consideration and should not be considered by you in your determination of this controversy." It is the general rule that an error in admitting improper evidence may be cured by an instruction which directs the jury to disregard it. (*Sanborn* v. *Powers,* 58 Mont. 214, 190 Pac. 990.) That rule is properly appli-

cable to the situation presented by this record. If error was committed by admitting this evidence, it was cured by the portion of Instruction No. 1 above quoted.

As to the second portion of this specification: B. P. Radigan, [4] through whom the deal between defendant and Brown was negotiated, appearing as a witness on behalf of plaintiff, testified without objection that the property in question was sold by the defendant to Brown for $2,500, and that Brown's lease called for the payment of a monthly rental of $200. On cross-examination by counsel for defendant he modified the statement by saying that the fixtures sold for $1,500 and that $1,000 was paid as a bonus for the lease, making the $2,500 referred to in his direct testimony. Referring to this transaction, the defendant, testifying in his own behalf on redirect examination, said: "On the deal with Mr. Brown, Mr. Radigan received $2,500. I made the deal with Mr. Radigan that he was to sell the fixtures for $1,500, if possible, and sell the lease also, and he was to get $1,000, of which he was to receive 50 per cent of everything over $1,500. That is what constituted the $2,500."

Having permitted this testimony to be introduced by plaintiff without objection, and then having substantially repeated it in his own case, defendant is not now in a position to assert that his rights were prejudically affected thereby.

Appellant's fourth specification of error is to the effect that the court erred in refusing to sustain the defendant's motion for a directed verdict, upon the ground that the sale of the property in question was made by Lucas, one of the alleged copartners, and was agreed to by Checuras, another of the alleged copartners, and that these two, constituting a majority of the copartners, had the right to make a sale of the whole of the partnership property and give good title to it.

Without giving consideration to the correctness of the rule of law invoked by this specification, we direct attention to the fact that it is based upon an erroneous conception of the evi-

dence. As heretofore pointed out, at some time not disclosed by the record, Mrs. Checuras seemingly obtained a return of whatever she had contributed to the partnership, and was not at all considered in connection therewith. Counsel's argument proceeds upon the theory that the $500 which was paid to George Checuras by the defendant under instructions of Peter Lucas, at the time the latter surrendered the lease and gave a bill of sale to the defendant for the restaurant equipment, was a payment for the interest of Mrs. Checuras in this property, but the evidence does not bear out this theory. The testimony shows that, at the time referred to, George Checuras appeared upon the scene and claimed that Peter Lucas owed him $500, which claim was admitted by Lucas, and that defendant gave Lucas a check with which to pay it. The testimony does not contain any indication that George Checuras claimed this money from Peter Lucas and received the same from the defendant as the agent of his wife or in settlement of any claim she might have on account of the partnership transaction.

The case having been submitted to the jury upon the theory [5] that plaintiff and Lucas alone were partners in the business, the declaration of section 7998, Revised Codes of 1921, that a partner, as such, has not authority "to dispose of the whole of the partnership property at once" is controlling; and under the doctrine of *Doll* v. *Hennessy Merc. Co.*, 33 Mont. 80, 81 Pac. 625, the plaintiff had a right to maintain this suit.

This disposes of all of appellant's specifications of error. Nothing has been pointed out which would justify a reversal of the judgment, and the same is accordingly affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES RANKIN and HOLLOWAY concur.

MR. JUSTICE GALEN, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.